IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONALD CONRAD,
*On Behalf of Himself & All Others
Similarly Situated,*

    **Plaintiff,**

v.

JIMMY JOHN'S FRANCHISE, LLC,
JIMMY JOHN'S ENTERPRISES, LLC, and
JIMMY JOHN'S LLC,

    **Defendants.**

Case No. 18-CV-00133-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Before the Court are Defendants Jimmy John's Franchise, LLC, Jimmy John's Enterprises, LLC, and Jimmy John's LLC's (*collectively* "Jimmy John's") Motion to Stay Third-Party Discovery, (Doc. 143) and Motion for Hearing, (Doc. 164); and Plaintiff Donald Conrad's Motion to Extend Fact Discovery Deadline, (Doc. 147). For the reasons below, the Court:

- **GRANTS IN PART** and **DENIES IN PART** Jimmy John's Motion to Stay Third-Party Discovery;
- **FINDS AS MOOT** Jimmy John's Motion for Hearing;
- **GRANTS IN PART** and **DENIES IN PART** Conrad's Motion to Extend Fact Discovery Deadline;
- **EXTENDS** the fact-discovery deadline to October 2, 2020;
- **EXTENDS** Conrad's deadline to reply in support of certification to October 2, 2020; and
- **ORDERS** the litigants to engage in discovery consistent with this Memorandum and Order.

I.  **BACKGROUND**

Jimmy John's is a nationwide fast-food restaurant chain. From at least 2014 to 2018, it required all franchisees to sign an agreement not to "recruit as a partner or investor/owner, _or hire as an employee_, any person then employed, or who was employed within the preceding twelve (12) months, by [Jimmy John's], any of [Jimmy John's] affiliates, or a franchisee . . . without obtaining the existing or former employer's prior written permission . . . ." (Franchise Agreement 24, Doc. 117-16) (emphasis added).

Conrad, a former Jimmy John's employee, alleges that the "No-Poach Agreement" had the effect of suppressing wages and stifling worker mobility, causing class-wide injury. (Conrad's Mot. to Certify 1, Doc. 117). He seeks to represent every individual employed by Jimmy John's "at any time between January 24, 2014 to July 12, 2018, whether owned and operated as a corporate store _or a franchise store_." (_Id._ at 1) (emphasis added). About 98% of Jimmy John's 2,700 locations are franchise stores. (_Id._ at 4).

The litigants began exchanging discovery in May 2018. (Higney Decl. 2, Doc. 144-1). In his First Set of Requests for Production, then-plaintiff Sylas Butler "sought, among other things, '[a]ll documents concerning any No Poach Restriction' and '[f]ranchisee employee employment data,' including data regarding employees' compensation and hours worked, job titles or positions, demographic information, employee dates, and records of promotions and corresponding pay increases or changes in benefits." [1] (_Id._ (quoting Butler's First Set of Reqs. for Produc. 7, 9, Doc. 144-2)). Jimmy John's objected

---

[1] This suit was originally brought by Sylas Butler in January 2018. (Compl. 1, Doc. 1). Donald Conrad replaced Butler as class representative in February 2019. (_See_ First Am. Compl. 1, Doc. 75).

"to the extent that [the requests] purport to call for . . . identification of documents not within their possession custody, or control including but not limited to documents that are within the exclusive possession, custody, or control of Jimmy John's *franchisees*." (Jimmy John's Resp. & Objs. 3, Doc. 144-3) (emphasis added).

Ever since, Jimmy John's has maintained in email communications and meet-and-confers that "many of the documents and/or data responsive to [Conrad's] requests would be in the possession of Jimmy John's franchisees." (Higney Decl. at 2). It "offered these same cautions during five additional meet and confers and/or email communications between March and October 2019." (*Id.* at 3).

In December 2019, Conrad moved for class certification. (*See* Conrad's Mot. to Certify at 4–20). And in July 2020, on the day before its response was due,[2] Jimmy John's disclosed 30 new declarants—including 19 franchisees and 11 current or former employees. (Conrad's Mem. in Opp. to Mot. to Stay 1–2, Doc. 150; Scolnick Decl. 14, Doc. 136-1). Those 19 franchisees own and operate 391 stores and "represent 15.3% of all putative class members." (Scolnick Decl. at 14). The declarations include, among other things, information about their compensation practices and whether they were aware of and enforced the No-Poach Agreement. (*See id.* at 15–18).

Jimmy John's relies heavily on the 19 declarations in its response to Conrad's Motion to Certify. The Introduction, for example, states:

---

[2] The Court extended all civil deadlines in response to the COVID-19 pandemic. *E.g.*, First Am. Admin. Order 10 (May 12, 2020), http://www.ilsd.uscourts.gov/Forms/AdminOrder266FirstAmended.pdf.

> Indeed, powerful testimony from 19 franchisees . . . and 10 current and former Jimmy John's employees further illustrates the varied universe of practices and experiences with respect to recruiting, hiring, and pay at Jimmy John's stores across the country.

(Jimmy John's Opp. to Mot. to Certify 3, Doc. 136). The Statement of Facts then discusses "the myriad ways that Jimmy John's employees are actually recruited, hired, and paid . . . ." (*Id.* at 7). And the Analysis makes frequent mention of the 19 franchisees and *what the data shows*. (*See, e.g., id.* at 12, 16, 18, 22).

Now, Conrad argues that "Jimmy John's gamesmanship" is meant "to spring undisclosed declarants on [him] at the eleventh hour, and then prevent [him] from investigating the veracity of the declaration's contents." (Conrad's Mem. in Opp. to Mot. to Stay at 1). He therefore asks the Court to extend the discovery deadline—which passed on August 12—and "allow [him] adequate time to cross-examine Jimmy John's new witnesses and test the factual assertions in their declaration. In the alternative, [he] asks that the Court strike the declarations from the docket and decline to consider them . . . ." (*Id.* at 2). On the other hand, Jimmy John's asks the Court to quash the subpoenas Conrad served on 35 franchisees, arguing that Conrad's request for more expansive discovery is unduly burdensome. (Jimmy John's Mem. in Supp. of Mot. to Stay 1, Doc. 144; Jimmy John's Suppl. Mem. to Mot. to Stay 1, Doc. 146).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure authorize litigants to exchange in broad discovery, subject to cost-benefit limitations:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 45(d).

At the onset of the discovery process, "the parties must consider the nature and basis of their claims and defenses . . . and develop a proposed discovery plan." Fed. R. Civ. P. 26(f)(2)–(3). The plan "must state the parties' views and proposals on . . . the subject on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues . . . ." *Id.* Moreover, "without awaiting a discovery request," litigants must "provide to the other parties . . . the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A). Disclosures must be supplemented or corrected "in a timely manner if the party learns that in some material respect that the disclosure or response is incomplete or incorrect, and if the additional or corrective information has

not otherwise been made known to the other parties during the discovery process or in writing . . . or as ordered by the court." Fed R. Civ. P. 26(e)(1).

"[D]iscovery from nonparties is, like all discovery, subject to the cost-benefit limitations set forth in Rule 26(b)(2)." Fed R. Civ. P. 45 advisory committee's note. And "[a] party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). In *Raineri*, the Seventh Circuit affirmed the quashing of a subpoena issued to a non-party witness in a criminal prosecution. *Id.* The witness traveled from California to Illinois to testify at trial. *Id.* Two weeks later, however, the defendant subpoenaed the witness to reappear. *Id.* The Government objected, and the defendant challenged the Government's standing to contest the third-party subpoena. *Id.* The Seventh Circuit agreed with the district judge, concluding that "[t]he prosecution's standing [to challenge the subpoena] rested upon its interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [the witness's] credibility." *Id.* Other "courts have consistently held that 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Rossman v. EN Eng'g, LLC*, ––F. Supp. 3d––, 2020 WL 3246431, at *3 (N.D. Ill. 2020) (collecting cases).

Ultimately, "discovery is an area over which the district courts have great authority and discretion . . . ." *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 432 (7th Cir. 2000). That said, "[o]n motion or on its own, the court <u>must</u> limit the frequency or extent of discovery . . . if it determines that . . . the party seeking discovery has had ample

opportunity to obtain the information by discovery in the action . . . ." Fed. R. Civ. P. 26(b)(2)(C)(ii) (emphasis added). "An order of this kind might be appropriate when discovery would burden the party from whom it is sought unduly, in comparison with any advantage it would provide to the discovering party, either because a particular matter is of only minor importance or because it has already been thoroughly gone into and further inquiry would be repetitious." Wright & Miller, 8A *Federal Practice and Procedure* § 2040 (3d ed. 2020).

### III. ANALYSIS

Both parties were in the wrong. Jimmy John's clearly knew that there were individuals (i.e., franchisees) with discoverable information that they might use to support their defenses. And even if they did not know who they were at the start of discovery, they still had a duty to supplement their disclosures when they later identified them. Worse, at least some of the declarations were made in early 2020; yet Jimmy John's <u>still</u> did not disclose the declarant-witnesses until it responded in July—hardly the "timely manner" contemplated by Rule 26.

Conrad too erred. From the onset, he knew relevant information was in the hands of franchisees. After all, he seeks to represent a class of <u>every</u> Jimmy John's employee, including those employed by franchisees. Yet it took until now for Conrad to seek discovery from those franchisees; even though he arguably had "ample opportunity" to do so, and Rule 26 <u>requires</u> the Court to limit discovery in such a case.

With all that, Conrad seemed content with the discovery he received in moving for class certification. Had Jimmy John's not relied on those declarations, there would be

no grounds for extending discovery. But because it did, Conrad would be prejudiced if denied the opportunity to cross-examine or obtain discoverable material from the franchisees to support his reply brief. The Court thus **GRANTS IN PART** Conrad's Motion to Extend and **DENIES IN PART** Jimmy John's Motion to Stay.

Finally, discovery is limited to the *19* franchisees relied on by Jimmy John's. True, Jimmy John's likely had reasons for choosing those 19 franchisees. But as discussed, Conrad should have pursued this discovery on its initiative. Broadening the scope of discovery would come at the expense of judicial efficiency and unduly burden third parties. The Court therefore **GRANTS IN PART** Jimmy John's Motion to Stay and **DENIES IN PART** Conrad's Motion to Extend.

## IV.   CONCLUSION

The Court:

- **GRANTS IN PART** and **DENIES IN PART** Jimmy John's Motion to Stay Third-Party Discovery (Doc. 143);
- **FINDS AS MOOT** Jimmy John's Motion for Hearing (Doc. 164);
- **GRANTS IN PART** and **DENIES IN PART** Conrad's Motion to Extend Fact Discovery Deadline (Doc. 147);
- **EXTENDS** the fact-discovery deadline to October 2, 2020;
- **EXTENDS** Conrad's deadline to reply in support of certification to October 2, 2020; and
- **ORDERS** the litigants to engage in discovery consistent with this Memorandum and Order.

**IT IS SO ORDERED.**

**DATED:  September 4, 2020**

*Nancy J. Rosenstengel*
_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**